# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD PAYNE, JR., | ) | |
| | ) | Civil Action No. 12 – 1584 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| SHERIFF GARY BROWNFIELD, | ) | |
| *Chairman of the Fayette County Board of Inspectors*, | ) | ECF No. 11 |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Donald Payne, Jr. (hereinafter referred to as "Plaintiff") initiated this *pro se* civil rights action on August 22, 2012, alleging that Defendant Sheriff Gary Brownfield (hereinafter referred to as "Defendant Brownfield" or "Sheriff Brownfield") violated his federal constitutional rights while he was detained at the Fayette County Prison from May 4, 2013, until the time he was transferred to Westmoreland County on June 7, 2012. Currently pending before the Court is Defendant Brownfield's Motion to Dismiss to which Plaintiff has responded in opposition. The Motion is now ripe for review, and, for the following reasons it will be granted without prejudice to Plaintiff's right to file an amended complaint as instructed herein.

**I.   Plaintiff's Allegations[1]**

Plaintiff's allegations pertain to the conditions of his confinement at the Fayette County Prison from May 4, 2012, until June 7, 2012. Plaintiff arrived at the Fayette County Prison on

---

[1] Plaintiff's allegations are identical to those contained in the Complaint against Defendants Michael J. Zavada and Brian S. Miller at Civil Action No: 2:!2-cv-1206.

1

May 4, 2012, at which time he was housed in B-Unit, the disciplinary unit. Plaintiff maintains that the unit was flooded with raw sewage, several cells did not have operating water or toilets, and that the walls and cell bars were covered in feces. He also maintains that the showers were saturated with black mold and that the drains omitted noxious fumes. He states that he and other inmates were forced to sleep on cots on the floor without a mattress due to overcrowding in the jail.

The following day, Plaintiff was removed from B-Unit and placed in the Special Housing Unit ("SHU") at the request of Westmoreland County Prison officials. According to Plaintiff, the walls directly outside of the SHU cells were covered with feces and there was a back-up of feces in his cell's toilet because it would not flush. He claims that water leaked from the toilet and settled on the floor in the middle of the cell, that there appeared to be a cup of urine set on the radiator, that trash was thrown about, and that there were used packages of toothpaste in the sink and on the floor behind the toilet.

The next day, Plaintiff complained to a guard that he did not have a toothbrush, toothpaste or washcloth but the guard responded stating that Plaintiff was lucky to even get a towel. Plaintiff repeatedly requested a grievance form to complain about the conditions of his confinement, including the lack of exercise and twenty-four hour lighting in the unit, but his requests were denied. He states that the raw sewage water leaking from the toilet accumulated on the floor to the point where he was forced to step in it.

Plaintiff was removed from the SHU on May 25, 2012, and housed in D-Unit with the general population. He states that he was happy with his cell apart from a large fan in his window situated directly next to a heating pipe that was covered with asbestos. He claims that the fan blew asbestos fibers in his face.

On May 29, 2012, Plaintiff was transported to the Westmoreland County courthouse for a preliminary hearing. Prior to leaving, he was told that he was going to be transferred to the Westmoreland County Prison and to pack up all of his belongings. This was apparently an error so Plaintiff was instructed to leave his belongings on the intake floor and told that they would be searched upon his return from court. When Plaintiff was returned to the Fayette County Prison, he realized that his belongings had been searched and that his eye medication and orange "sippy cup" were missing. He was told by the lieutenant at intake that his medication needed to be approved by medical and that he could not keep it with him until he had authorization. Plaintiff explained that he already had authorization and that he has an eye impairment which requires him to put his medication in his eye every thirty to forty-five minutes or else his eye will become dry and painful. The lieutenant expressed that he did not care. Plaintiff then informed his unit officer of his need for the medication and the officer told Plaintiff that he would notify medical. Plaintiff states that it was not until later that evening when the nurse finally informed him that he could not have his cup because it contained "hooch", nor could he have his eye emollient because it was in a metal squeeze tube. Plaintiff was eventually able to obtain a grievance and complain about not receiving his medication and the damage it was causing to his eye.

Plaintiff also filed two more grievances on June 2, 2012, one of which he grieved the situation regarding his eye medication and the other about the conditions of his confinement. The following day, Plaintiff was offered his eye cream by a nurse but he refused to take it because she squeezed too much out of the tube and improperly applied it to the edge of the cup. Plaintiff states that he had a difficult time obtaining his eye ointment for the following four days.

On June 7, 2012, Plaintiff was called into the booking area by a lieutenant and was able to resolve his grievance regarding his eye medication. However, he claims that one of his

grievances was stuck to the back of another and that it was not resolved with the lieutenant. Because of this, Plaintiff placed an appeal into the Warden and was transferred to Westmoreland County immediately thereafter.

**II.     Standard of Review**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Ashcroft v. Iqbal, 129 S. Ct.1937, 1949 (May 18, 2009) (citing Twombly, 550 U.S. at 555-57). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. (citing Twombly, 550 U.S. at 556-57).

In Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the United States Court of Appeals for the Third Circuit discussed its decision in Phillips v. County of Allegheny, 515 F.3d 224, 232-33 (3d Cir. 2008) (construing Twombly in a civil rights context), and described how the Rule 12(b)(6) standard had changed in light of Twombly and Iqbal as follows:

> After Iqbal, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1948. The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See* Id. at 1949-50; *see also* Twombly, 505 U.S. at 555, & n. 3.

Fowler, 578 F.3d at 210.

Thereafter, in light of Iqbal, the United States Court of Appeals for the Third Circuit in Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009), set forth the following two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S. Ct. at 1949]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See* Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'- 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-11.

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6). Oshiver v. Levin,

Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing 5A Wright and Miller, *Federal Practice and Procedure: Civil 2d,* § 1357; Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)).  A court may also consider indisputably authentic documents.  Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004); Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993); Golden v. Cook, 293 F. Supp.2d 546, 551 (W.D. Pa. 2003) ("[C]ourts are permitted to consider matters of which they may take judicial notice, including records and reports of administrative bodies, and publically available records and transcripts from judicial proceedings 'in related or underlying cases which have a direct relation to the matters at issue.'") (citations omitted).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged.  Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003).  In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)).  *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688).  Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim.  *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

**III.    Discussion**

Defendant Brownfield moves to dismiss the Complaint on the basis that he lacks personal involvement in the alleged wrongdoing and he cannot be held liable based on a theory of supervisory liability; or, alternatively, that the allegations in the Complaint do not rise to the level of a constitutional violation. For the reasons that follow, the Court finds that Plaintiff has not stated a claim against Defendant Brownfield in either his individual or official capacity. The Motion to Dismiss will, therefore, be granted, albeit without prejudice to Plaintiff's right to file an amended complaint.

**A.  Personal Involvement**

For liability under 42 U.S.C. § 1983, a defendant "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n.3 (1981)). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207. However, alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement; allegations "must be made with appropriate particularity." Id.

A supervisory defendant can be held liable if he or she played an "affirmative part" in the complained-of misconduct. *See* Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986) (citing Rizzo v. Goode, 423 U.S. 362, 377 (1976)). In this regard, the Third Circuit Court of Appeals has stated that "a supervisor may be personally liable . . . if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile

Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (footnote omitted).  Additionally, "[i]t is possible to establish section 1983 supervisory liability by showing a supervisor tolerated past or ongoing misbehavior."  Baker v. Monroe Township, 50 F.3d 1186, 1191 n.3 (3d Cir. 1995) (citing Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 724-25 (3d Cir. 1989)).  Further, "a supervisor may be liable under § 1983 if he or she implements a policy or practice that creates an unreasonable risk of a constitutional violation on the part of the subordinate and the supervisor's failure to change the policy or employ corrective practices is a cause of this unconstitutional conduct."  Argueta v. United States Immigration & Customs Enforcement, 643 F.3d 60, 72 (3d Cir. 2011) (citing Brown v. Muhlenberg Township, 269 F.3d 205, 216 (3d Cir. 2001).

Presumably, Plaintiff attempts to establish liability against Defendant Brownfield based on his perceived supervisory role as the Fayette County Sheriff.  However, Plaintiff has failed to allege any personal involvement on Sheriff Brownfield's part of which could state a plausible claim for relief.  For example, Plaintiff has not alleged that Sheriff Brownfield was personally involved in causing the conditions of which he complains, nor has he alleged that the Sheriff was made aware of, or acquiesced in, his exposure to such conditions.  In essence, Plaintiff has failed to allege that Sheriff Brownfield played an "affirmative" role in the violation of his rights and he has thus failed to state a claim against the Sheriff in his individual capacity.

### B.  Fayette County

To the extent Plaintiff has also asserted claims against Sheriff Brownfield in his official capacity, he has similarly not stated a claim upon which relief can be granted.  Suits against government officials in their official capacities are properly treated as suits against the governmental entity itself – here, Fayette County.  *See* A.M. v. Luzerne Cnty. Juv. Det. Ctr., 372 F.3d 572, 580 (3d Cir. 2004).

A local government like Fayette County may not be sued under section 1983 for an injury inflicted by its employees or agents. Monell v. Dept. of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978). Instead, a local government is subject to liability "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of by the plaintiff. Id. Monell, thus, created a "two-path track" to municipal liability, depending on whether a section 1983 claim is premised on a municipal policy or custom. Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996).

In Andrews v. City of Philadelphia, 895 F.2d 1469 (3d Cir. 1990), the Third Circuit expanded on these two sources of liability:

> A government policy or custom can be established in two ways. Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict. A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanently and well-settled' as to virtually constitute law.

Id. at 1480 (quoting Beck, 89 F.3d at 971) (citations omitted). Under either route, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (citing Andrews, 895 F.2d at 1480)). In order to determine who has policymaking responsibility, "a court must determine which official has final, unreviewable discretion to make a decision or take an action." Andrews, 895 F.2d at 1481.

"Once a § 1983 plaintiff identifies a municipal policy or custom, he must 'demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged.'" Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000) (quoting Bd. of

County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404 (1997) (internal quotations omitted)). "That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Bryan County, 520 U.S. at 404. If "the policy or custom does not facially violate federal law, causation can be established only by 'demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequences.'" Berg, 219 F.3d at 276 (quoting Bryan County, 520 U.S. at 407) (internal quotations omitted); *see also* City of Canton v. Harris, 489 U.S. 378, 389 (1989).

Here, Plaintiff's allegations are insufficient to state a claim against Fayette County. Plaintiff does not allege that the conditions of his confinement in the Fayette County Prison were caused by a Fayette County policy or custom or that Fayette County was deliberately indifferent to the conditions imposed upon its detainees in the jail. Because Plaintiff has not identified a custom or policy that was the "moving force" behind the alleged unconstitutional conditions of his confinement at the Fayette County Prison, or that the county was deliberately indifferent to the substantial risk of unnecessary harm to its inmates caused by such conditions, Plaintiff has failed to state a claim against Fayette County or Defendant Brownfield in his official capacity.

### C. Amendment of the Complaint

The Court must allow amendment by the plaintiff in a civil rights case brought under § 1983 before dismissing pursuant to Federal Rule of Civil Procedure 12(b)(6), irrespective of whether it is requested, unless doing so would be "inequitable or futile." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); *see also* Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (asserting that where a complaint is vulnerable to dismissal pursuant to 12(b)(6), the district court must offer the opportunity to amend unless it would be

inequitable or futile). While Plaintiff has failed to state a claim against Defendant Brownfield in either his individual or official capacity, it is unclear whether granting him leave to amend would necessarily be futile. Therefore, Plaintiff shall have thirty days from the date of this order to file an amended complaint if he so desires. If he fails to do so within the time allowed, then his Complaint will be dismissed for failure to state a claim and this matter will be closed.

**AND NOW**, this 12th day of August, 2013;

**IT IS HEREBY ORDERED** that Defendant Brownfield's Motion to Dismiss (ECF No. 11) is **GRANTED** without prejudice.

**IT IS FURTHER ORDRED** that Plaintiff shall have until September 10, 2013, to file an amended complaint. If he fails to do so within the time allowed, then the Court will dismiss his Complaint for failure to state a claim upon which relief may be granted and close this case.

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc: Donald Payne, Jr.
311 Baker Street
Clairton, PA 15025
*Via U.S. Postal Mail*

Counsel of Record
*Via ECF Electronic Mail*